UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Doreen Raimondi,

                          Plaintiff,

v.

Avaya, Inc., et al.

                          Defendants.

Case No. 20-CV-06566-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Doreen Raimondi ("Plaintiff") brings this action pursuant to the Family Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA") and the New York State Human Rights Law, N.Y. Executive Law §§ 290, et seq. ("NYSHRL"), alleging that unlawful employment practices by Defendants Avaya, Inc. ("Avaya"), Matthew Levesque, and Daniel Plunkett caused her to be terminated from Avaya. ECF No. 1. Specifically, Plaintiff alleges that Defendants subjected her to (i) retaliation and/or interference in violation of the FMLA; (ii) discrimination in violation of the NYSHRL; and (iii) retaliation in violation of the NYSHRL. *Id.* Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages. *Id.* at 4.

Under Federal Rule of Civil Procedure 56, Defendants filed a Motion for Summary Judgment on Plaintiff's Amended Complaint on March 28, 2022. ECF No. 42. On June 7, 2022, Plaintiff filed her opposition to Defendants' Motion. ECF No. 50. On July 26, 2022, Defendants replied. ECF No. 56.

For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

1

**FACTUAL BACKGROUND**

On January 2, 2019, Plaintiff became Director of "System Integrator Alliances" at Avaya. ECF No. 42-41 at 11. Her job included sales and development of strategic partnerships with systems integrators and technology companies. *Id*. When hired, Plaintiff reported to Mark Vella, then-supervisor of the system integrator group of which Plaintiff was a member. *Id*. at 11. In July 2019, Vella resigned and Defendant Daniel Plunkett, Vella's former boss, became Plaintiff's supervisor. *Id*. at 11. After Vella's resignation, Plaintiff allegedly contacted Plunkett to express interest in Vella's former role, but Plunkett denied Plaintiff's application. *Id*. Plunkett advanced Defendant Matthew Levesque for the position. *Id*. In August 2019, Levesque filled Vella's position as Plaintiff's supervisor and became Senior Director of "Global System Integrators." ECF No. 42-41 at 11. Plunkett remained supervisor of both Plaintiff and Levesque as "Senior Director of Alliances, Service Providers and System Integrators." *Id*.

In early September 2019, Defendants Plunkett and Levesque held a meeting in Denver, Colorado for all employees in Plunkett's department to – according to Defendants – address sales goals and a lack of sufficient revenue from the group. *Id*. The meeting was attended by Plunkett, Levesque, Plaintiff, and other employees in the group, including James Taylor, Dawn Medina, Anthony Rosselli, and Benjamin Lee. *Id*.

On September 6, 2019, a few days after the meeting, Plaintiff contacted Avaya's Head of Human Resources, Faye Tylee, to request a "confidential phone call." *Id*. at 12. Later that day, Plaintiff told Tylee over the phone that she had learned that Levesque, before joining Avaya, was terminated from his former job because of a video of him and a woman engaging in inappropriate behavior.[1] *Id*. After the call, Tylee emailed Plaintiff advising her that Avaya would take her report

---

[1] Levesque allegedly placed his hand down the pants of an individual later identified as his sister-in-law. *Id*. The video of the incident has since been removed from the Internet. *Id*.

seriously, that an employee assistance program ("EAP") was available for her to use, and that human resources would contact Plaintiff at a later date to discuss "next steps." *Id*. The same day, Plaintiff emailed Tylee to express her desire to discuss the Denver meeting. *Id*. On September 8, 2019, Plaintiff forwarded the video to Tylee and expressed concerns about being "in a chain of command that does not respect women[,]" as well as concerns about "speaking up" because "[r]etaliation happens in many forms silently." *Id*. at 13.

In another call with Tylee on September 9, 2019, Plaintiff reported that Levesque repeatedly interrupted her and treated her unfairly at the Denver meeting and complained again about the video of Levesque. *Id*. Tylee advised Plaintiff that Avaya would conduct a human resources investigation into her concerns. *Id*. Shortly thereafter, Tylee and Teresa Van De Brake, another member of Avaya's human resources team, began a confidential investigation related to Plaintiff's reports, in which the two interviewed each attendee of the Denver meeting and reviewed the background investigation materials that were gathered in connection with Levesque's hiring. *Id*. Tylee and Van De Brake eventually concluded that Levesque did not act inappropriately at the Denver meeting and did not locate any negative information obtained in connection with Levesque's background investigation. *Id.* at 14.

On September 23, 2019, Tylee, and Van De Brake discussed the results of the human resources investigation with Plaintiff over the phone. *Id*. Tylee and Van De Brake informed Plaintiff that they had concluded that Levesque did not act inappropriately at the Denver meeting; advised Plaintiff that each attendee of the Denver meeting was interviewed pursuant to the investigation; and noted that no negative information was uncovered pursuant to Levesque's background investigation. *Id*. Plaintiff contested their conclusions and continued to express her concerns about the video of Levesque and his prior conduct. *Id*.

3

Shortly thereafter, Plaintiff asked human resources for a transfer of supervision from Levesque to one or two other individuals within the company. *Id*. at 15. Tylee and Van de Brake followed up on her request, but the individuals to which Plaintiff requested a transfer claimed that they did not have open opportunities within their respective teams. *Id*. Plaintiff was notified of their decisions. *Id*.

On October 31, 2019, Plaintiff and Levesque met to discuss a "3-Year Plan" that Levesque had directed all of his direct reports to prepare. *Id*. During the meeting, Plaintiff expressed her concerns about Levesque's prior conduct and Levesque's conduct at the Denver meeting, and claimed that Levesque had called her a "loser" and bullied her. *Id*. The meeting ended on good terms and Plaintiff texted Levesque afterward to express her desire to excel in her current role. *Id*. Plaintiff's statements during the meeting, however, prompted Levesque to contact Van De Brake about the interaction and he was directed to memorialize his discussion with Plaintiff in an email to Plaintiff. *Id*. On November 1, 2019, Levesque emailed Plaintiff about the meeting and Plaintiff's comments, stating that he was "surprised" by her claims of name-calling and bullying, had "not called [her] any names or bullied [her]," and that he was "holding [the team] to high performance standards[,]" before thanking Plaintiff for the discussion and her follow-up communications. *Id*. at 16. Plaintiff responded by promising not to fail in her current role, expressing surprise that her team may not have been meeting expectations, and advised that she had been very ill for the past few weeks. *Id*. In her response, Plaintiff did not dispute or correct Levesque's claim that he had not engaged in name-calling or bullying. *Id*.

On November 3, 2019, Plaintiff texted Levesque that she was in the hospital. *Id*. at 17. Levesque and Plaintiff had a phone call on November 5, 2019, in which Plaintiff stated that her doctor advised her to take time off and Levesque advised Plaintiff to initiate the leave process with

4

human resources. *Id*. Plaintiff did so, and Van De Brake advised her in an email that the benefits group would assist. *Id*. Sedgwick, Avaya's third-party benefits vendor, contacted Plaintiff with the leave paperwork, which included information about FMLA leave. *Id*. The same day, Levesque emailed Plaintiff to wish her a speedy recovery, and Plaintiff responded by forwarding a copy of the human resources email that acknowledged receipt of her request to initiate leave. *Id*. at 18.

On November 8, 2019, Plaintiff advised Sedgwick that she was withdrawing her claim for disability leave. *Id*. On November 11, 2019, Plaintiff returned to work and Sedgwick closed her leave claim. *Id*.

In early December 2019, Plunkett transferred Levesque to a lateral position supervising service providers in order to generate revenue for the service provider group. *Id*. Eric Serrahn replaced Levesque as supervisor of the system integrator group, which included Plaintiff, and attended reviews of Levesque's former direct reports that Avaya had directed to be conducted as part of the transition. *Id*. Levesque administered the reviews. *Id*. Levesque's review of Plaintiff assigned Plaintiff three (3) or four (4) stars out of five (5) for each category of the review. *Id*. Plaintiff completed a review of her own time in the group, which did not mention her earlier concerns with Levesque or with the human resources investigation. *Id*. at 19. Levesque and Plaintiff did not work together again after the review. *Id*.

In February 2020, Plaintiff and six (6) other employees under Plunkett's supervision were identified by Plunkett as "non-essential and/or non-performing." *Id*. Plunkett allegedly determined that such employees were not producing sufficient revenue. *Id*. Plaintiff and Benjamin Lee were the only individuals identified that were working with system integrators. *Id*. Both Plaintiff and Lee were selected for termination. *Id*.

On March 23, 2020, Lee informed Plaintiff that he had been terminated that day. *Id*. That morning, Plaintiff was invited to attend an afternoon meeting titled "Turnover Call." *Id*. That afternoon, Plaintiff was terminated by Avaya during the call. *Id*.

On August 4, 2020, Plaintiff commenced this action. *See* ECF No. 1. Plaintiff alleges against all Defendants that (i) her termination was retaliation and/or interference related to her November 2019 illness and attempt to take leave under the FMLA; (ii) her termination was discrimination, in violation of the NYSHRL, arising out of her perceived disability and illness in relation to her November 2019 inquiry about disability leave; and (iii) her termination was retaliation, in violation the NYSHRL, arising out of her complaint to human resources regarding Levesque's conduct before and during his employment at Avaya. *Id*.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment" if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 323), "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

6

summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law" are "material." *Id.* at 248. A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Angulo v. Nassau Cnty.*, 89 F. Supp. 3d 541, 548 (E.D.N.Y. 2015) (quoting another source). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. *Anderson*, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading....").

7

**DISCUSSION**

For the reasons below, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's FMLA claim. In addition, because the Court dismisses the only claim over which it has original jurisdiction, the Court is inclined to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c). Because the parties should be provided notice and an opportunity to be heard before this Court *sua sponte* dismisses such claims, the Court directs further briefing from the parties with respect to whether the Court should, in its discretion, exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL claims. If the parties do not comply with the Court's order, Plaintiff's remaining claims will be dismissed without prejudice.

I. **FMLA Claim**

The Court concludes that Plaintiff was not eligible for FMLA leave at the time of her alleged attempt to exercise rights protected by the FMLA. Therefore, Plaintiff was not protected under the FMLA, and her claim that her termination constituted retaliation and/or interference under that statute must be dismissed.

As a general matter, only "eligible employees" are entitled to take leave under the FMLA. *Hendrix v. Pactiv LLC*, No. 19-CV-6419L, 2020 WL 562748 (W.D.N.Y. Feb. 5, 2020). To be "eligible," an employee must have (1) been employed for a period of at least 12 months and (2) completed at least 1,250 hours of service within that year. 29 U.S.C. § 2612(2). "Proving entitlement is a necessary prerequisite to a valid FMLA retaliation [or interference] claim." *Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 318 (S.D.N.Y. 2012); *see, e.g.*, *Milne v. Navigant Consulting*, No. 08-CV-8964, 2010 WL 4456853, at *10 n. 19 (S.D.N.Y. Oct. 27, 2010) ("It appears clear that in order for a plaintiff to 'exercise rights protected under the

FMLA,' the plaintiff must demonstrate she actually has a valid claim to FMLA benefits."); *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 194-95 (S.D.N.Y. 2011); *Brown v. The Pension Boards*, 488 F. Supp. 2d 395, 410 (S.D.N.Y. 2007) (retaliation claim failed because employee "did not enjoy FMLA protection").

More specifically, to establish a prima facie case of retaliation or interference under the FMLA, a plaintiff must demonstrate: "(1) that she is an 'eligible employee' under the FMLA; (2) that defendants constitute an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) that defendants denied her benefits to which she was entitled by the FMLA." *Roberts v. Ground Handling, Inc.*, 499 F. Supp. 2d 340, 351 (S.D.N.Y. 2007) (quotations and citations omitted).

Because Plaintiff fails to establish the first element of a prima facie retaliation or interference claim under the FMLA, the Court does not reach the remaining elements. In this case, Plaintiff's employment with Avaya began on January 2, 2019. Plaintiff attempted to take leave under the FMLA in November 2019, less than the statutorily required 12-month period needed for entitlement to FMLA protections. Plaintiff, therefore, was not an "eligible employee" under the FMLA at the time of her November 2019 attempt to take leave. In addition, Plaintiff offers no evidence that she attempted to exercise rights under the FMLA after the statutorily required 12-month period elapsed in January 2020. That is, Plaintiff does not proffer documentary or "hard evidence" to show that she did so, beyond threadbare allegations and conclusory statements contained in Plaintiff's self-serving declaration and deposition testimony.[2] *See* ECF No. 50-1, 50-

---

[2] Plaintiff states in her declaration, without documentary support or corroboration, that she had "regularly discussed the possibility of leave with [her] supervisor" in the period before her termination and that had Levesque "not threatened [her] employment, [she] would have attempted to take leave" after she became eligible for it under the FMLA. *See* ECF No. 50-1 at 5. Setting aside whether merely discussing the "possibility" of leave constitutes an attempt to exercise rights under the FMLA, Plaintiff offers no evidence that she did so beyond her own conclusory statements. Plaintiff similarly does not offer evidence that Levesque "threatened" her employment after she became eligible for FMLA leave.

9

2; *see also Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (concluding that a nonmoving party cannot defeat summary judgment by relying on allegations in the complaint, self-serving conclusory statements, or mere assertions that affidavits supporting the motion are not credible). For these reasons, Plaintiff's FMLA claim must be dismissed.

## II. State Law Claims

Because the Court dismisses the only claim over which is it has original jurisdiction, the Court is inclined to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims arising under the NYSHRL. *See* 28 U.S.C. § 1367(c). Because the parties should be provided notice and an opportunity to be heard before a court *sua sponte* dismisses such claims, the Court directs the parties to submit further briefing with respect to whether the Court should, in its discretion, exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL claims. *See Catzin v. Thank You & Good Luck Corp.*, 899 F. 3d 77, 82 (2d Cir. 2018). If the parties do not comply with the Court's order, Plaintiff's remaining claims will be dismissed without prejudice.

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As the Supreme Court stated in discussing § 1367's predecessor judicial doctrine of pendent jurisdiction, however, this is traditionally "a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Subsection (c) of § 1367 "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Of particular relevance here, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

If a district court's discretion is triggered under § 1367(c)(3), it should balance the traditional "values of judicial economy, convenience, fairness, and comity," *Cohill*, 484 U.S. at 350, in deciding whether to exercise jurisdiction. *See Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446-47 (2d Cir.1998). In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." 484 U.S. at 350 n. 7; *see also Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.... [I]f the federal law claims are dismissed before trial ... the state claims should be dismissed as well.").

This may be the "usual case" in which Plaintiff's state claims should be dismissed and refiled in state court "where they will be afforded a 'surer-footed reading of applicable law.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (citing *Cohill*, 484 U.S. at 350 n. 7). The judicial resources expended in this case do not appear to approach those that the Second Circuit has previously held justify pendent or supplemental jurisdiction after dismissal of all original-jurisdiction claims. *Cf. Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996) (finding no abuse of discretion in exercise of jurisdiction over state claims where federal claim was dismissed only nine days before trial); *Raucci v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (finding no abuse of discretion in exercise of jurisdiction over state claims despite dismissal of federal claim where discovery was completed, three dispositive motions were decided, and case was ready for trial). This case has been pending before this Court for approximately two years, but only one dispositive motion – Defendants' motion now before

11

the Court – has been addressed, and it was filed less than one year ago.  In addition, the Court has set no trial date, and our Circuit has held dismissal of state law claims to be proper even where one was imminent.  Further, the Court can presently discern no "extraordinary inconvenience" or "inequity" occasioned by permitting Plaintiff's state claims to be refiled in state court.  *Kolari*, 455 F.3d at 123-24.  There, the claims may be afforded a "surer-footed reading of applicable law."  *Cohill*, 484 U.S. at 350 n. 7.  Still, however, "insofar as a district under undertakes, *sua sponte*, the inquiry into whether to maintain supplemental jurisdiction […], it must give the parties notice and an opportunity to be heard prior."  *Catzin*, 899 F.3d at 84.  This is because "[n]o principle is more fundamental to our system of judicial administration than that a person is entitled to notice before adverse judicial action is taken against him."  *Lugo v. Keane*, 15 F.3d 29, 20 (2d Cir. 1994) (per curiam).

With these precepts in the mind, the Court directs the parties to submit further briefing with respect to whether the Court should, in its discretion, exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL claims.  *See Catzin*, 899 F. 3d at 82.  If the parties do not comply with the Court's order, Plaintiff's remaining claims will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's first claim.  With respect to Plaintiff's second and third claims, Defendants' motion for summary judgment is DENIED.  Because the Court dismisses the only claim over which it has original jurisdiction, the Court directs the parties to submit further briefing with respect to whether the Court should, in its discretion, exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL claims.  *See Catzin v. Thank You & Good Luck Corp.*, 899 F. 3d 77, 82 (2d Cir. 2018).  The parties shall file their respective briefs on the issue within two (2)

weeks of the date of the issuance of this Decision and Order. If the parties do not comply with the Court's order, Plaintiff's remaining claims will be dismissed without prejudice.

IT IS SO ORDERED.

Dated: January 11, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York